*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NIKO SHAWNTA SIMMONS,

Defendant-Appellant.

UNPUBLISHED
December 17, 2025
10:53 AM

No. 369942
Wayne Circuit Court
LC No. 21-005037-01-FC

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of armed robbery, MCL 750.529; assault with intent to do great bodily harm less than murder (AWIGBH),[1] MCL 750.84(1); being a felon in possession of a firearm (felon-in-possession), MCL 750.224f(1); and three counts of carrying a firearm during the commission of a felony, third offense (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 50 years each for the armed robbery and AWIGBH convictions and 15 to 30 years for felon-in-possession, to be served consecutively to three concurrent 10-year terms of imprisonment for the felony-firearm convictions. We affirm.

Defendant's convictions arise from the armed robbery of a clerk in a Dearborn Heights convenience store and the subsequent assault of a police officer in the parking lot of the store on the afternoon of October 30, 2020. The officer, who was off duty, was standing by the soda fountain inside the store when a masked man, later identified as defendant, pointed a gun at him. According to the officer's testimony at trial, the officer "backed off" and delayed approaching defendant to avoid gunfire inside the store. Meanwhile, defendant approached the store clerk working the register and, at gunpoint, instructed her to open the register. After she complied, defendant took cash from the register, left the store, and removed his mask once he was outside. The officer left the store to apprehend defendant, announced that he was a police officer, and

---

[1] The jury found defendant guilty of AWIGBH as a lesser offense to an original charge of assault with intent to commit murder, MCL 750.83.

-1-

ordered defendant to the ground. Defendant then fired his gun at the officer and the officer, who was standing behind his vehicle, returned fire. The shooting stopped after defendant fell to the ground, and the officer approached him and ordered defendant to remain on the ground. Other law enforcement officers quickly arrived and arrested defendant. Defendant was taken to the hospital, where his identity was later confirmed.

## I. MOTION TO DISMISS–SPEEDY TRIAL

Defendant first contends that his constitutional right to a speedy trial was violated. We disagree.

We review a trial court's decision on a motion to dismiss for an abuse of discretion. *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *People v Boshell*, 337 Mich App 322, 331; 975 NW2d 72 (2021). "Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and constitutional law." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 2. We review the trial court's findings of fact for clear error and review constitutional questions de novo. *Id.*

Both the Michigan and United States Constitutions guarantee criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. The right is also guaranteed by statute and court rule. See MCL 768.1; MCR 6.004(A). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). "[A] defendant's right to a speedy trial is not violated after a fixed number of days." *Id.* Instead, "[i]n determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id.* at 261-262 (discussing the standard articulated in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972)). "Under the *Barker* test, a presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Williams*, 475 Mich at 262 (quotation marks and citation omitted). "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id.*[2]

Applying the *Barker* factors to this case, defendant was arrested and jailed on October 30, 2020, and trial began approximately 36 months later on November 13, 2023. There is no meaningful dispute that this represents a very significant delay, and it far exceeds the 18-month

---

[2] The prosecution disputes whether this "18-month rule" is substantively correct and whether a presumption of prejudice should attach to defendant's claim, but as illustrated above, these points are well settled under binding authority. Furthermore, the prosecution's argument is of no practical consequence here, given our conclusion that the prosecution has rebutted the presumption of prejudice in this case and that defendant's claim correspondingly fails.

threshold at which prejudice from the delay is presumed. See *id*. The parties disagree, however, on how to allocate the blame for the delay, and whether the delay caused prejudice to defendant.

In assessing the reasons for a delay, reviewing courts "may consider which portions of the delay were attributable to each party when determining whether a defendant's speedy trial rights have been violated and may attribute unexplained delays—or inexcusable delays caused by the court—to the prosecution." *Smith*, ___ Mich App at ___; slip op at 2. That said, this Court has held, consistent with "the overwhelming weight of authorities," that "delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim." *Id.* at slip op 4. In this case, the trial court examined the procedural history of the case and found that "the vast majority" of the delays were caused by the pandemic and the restrictions and safety protocols implemented in response to it. Defendant identifies, and we see, no error in this finding; indeed, as was the case in *Smith*, defendant's "brief does not once mention the COVID-19 pandemic and its impact on court proceedings as a reason for delay." *Id*.

Beyond the substantial delays that were directly attributable to the pandemic, there are several additional delays that were attributable to the defense. For example, during a final conference in June 2022, defendant requested an additional final conference, which the trial court scheduled for that August. The day before the additional conference was scheduled to be held, however, defense counsel requested and was granted an adjournment of four to six weeks because of a death in counsel's family, because he needed additional time to file a motion, and because he was "under COVID quarantine." Subsequently, on the date scheduled for trial, counsel requested additional time because—as summarized by the trial court—counsel and defendant had issues communicating. Delays caused by adjournments requested by defendant may be attributed to the defense. See *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999). In sum, the record supports that the substantial delays were largely because of an exceptional matter, the COVID-19 pandemic, which is not attributable to either party, and several delays were in fact caused by the defense.

With respect to the assertion of the speedy-trial right, we look at when, if at all, the defendant asserted the right. See, e.g., *Smith*, ___ Mich App at ___; slip op at 2; *Cain*, 238 Mich App at 113-114. Defendant was arrested in October 2020 and was arraigned in December 2020. After a series of (COVID-19-related) delays, defendant attended an in-person preliminary examination in July 2021. During the preliminary examination, defense counsel announced his intention to file a "speedy trial motion in violation of the 180 days as it relates to the delay of this particular case." Yet it was not until October 2022 that defendant filed his "Emergency Motion for Dismissal Pursuant to Violation of 180-Day Rule." Although defendant conflated his assertion of his speedy-trial right with a dismissal for violation of the 180-day rule, defendant argued the applicable law related to a speedy-trial violation and requested that the trial court "grant his Motion to Dismiss for Lack of Speedy Trial." Defendant eventually filed a second motion for dismissal in September 2023, asserting his speedy-trial right, and trial was held less than two months later.

Lastly, regarding prejudice, there are two types: prejudice to the person and prejudice to the defense. *Smith*, ___ Mich App ___; slip op at 5. It is the latter prejudice that is the more crucial in assessing a speedy-trial claim "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. (citation omitted). Defendant argues that he endured more than three years of anxiety and stress while awaiting trial—specifically, that

"excessive pre-trial incarceration was highly prejudicial in terms of the stress, loss of contact with family and friends, loss of work and income opportunities, and the clear limitations on every-day life that accompany incarceration." As this Court had explained, however, such "general allegations of prejudice are insufficient to establish" that a defendant's right to a speedy trial was violated. *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997); see also, e.g., *Smith*, ___ Mich App ___; slip op at 5 ("[A]nxiety, alone, cannot establish a speedy-trial violation."). And there is no indication or suggestion that the delay adversely affected defendant's ability to defend against the charges. To the contrary, defendant concedes that he "cannot show that witnesses were not available to him due to the delay, or that any necessary documentation was lost in the intervening time period."

In sum, when balancing the relevant factors, defendant's right to a speedy trial was not violated. Even though the length of delay between defendant's arrest and trial was approximately three years and defendant asserted his speedy-trial right during that delay, the chief reason for delay was the unanticipated impact of the COVID-19 pandemic, and there is no evidence that defendant was cognizably prejudiced by the substantial delay. Defendant "undoubtedly . . . suffered some amount of personal prejudice by the length of his incarceration awaiting trial, particularly considering the risk of exposure to COVID-19 in jails and prisons," but, "[m]ost important to our review . . . is that the delay did not create any identifiable prejudice to the defense." *Smith*, ___ Mich App ___; slip op at 5. Therefore, defendant was not denied his constitutional right to a speedy trial, and the trial court properly denied his motion to dismiss on this basis.

## II.    MISTRIAL

Defendant next argues that the trial court abused its discretion by denying defendant's motion for a mistrial after a police sergeant gave nonresponsive testimony referring to defendant's photograph on the Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS). We disagree.

We review a trial court's decision on a motion for a mistrial for an abuse of discretion. *Boshell*, 337 Mich App at 335. "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citation omitted). "[T]he moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id*. (quotation marks and citation omitted).

Defendant's request for a mistrial was based on the following exchange between the prosecutor and the police sergeant at trial: When questioning the sergeant about how he confirmed defendant's identity, the prosecutor asked, "Did you pull up his Secretary of State photograph as well?" The sergeant responded, "Ah, yes, his Secretary of State and his MDOC OTIS photo." Pointing to the latter half of this response, defendant maintains that the sergeant's "unresponsive and gratuitous prejudicial comment was improper" and that it denied him a fair trial.

We see no abuse of discretion in the trial court's denial of defendant's request for a mistrial on this basis. As an initial matter, it bears mention that, at the time the offending remark was offered, the parties had already been anticipating that they would—and then subsequently did—

-4-

stipulate to defendant's prior qualifying felony for purposes of his charge of felony firearm. In fact, when ruling on the defense's objection to the sergeant's remark, the trial court asked counsel if he agreed that the defense was "prepared to enter a stipulation eventually regarding the prior conviction?" Defense counsel admitted that he planned to so stipulate, but argued that it did not cure the error because a defendant "can have a prior conviction for something that he received probation for and he wouldn't be on the MDOC website."

Beyond the fact that the parties later stipulated to defendant's prior felony conviction, the challenged portion of the sergeant's response was an unsolicited answer to a properly asked question. As a general rule, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Waclawski*, 286 Mich App 634, 710; 780 NW2d 321 (2009) (citation omitted). "Although the challenged portion of [the witness's] testimony went beyond the scope of the prosecutor's questioning, it constituted an isolated comment that was not repeated or explored further." *Id*. Nor, for that matter, is there any indication that the prosecutor purposefully elicited the challenged testimony, and defense counsel conceded as much when arguing his motion. Moreover, the trial court gave, without objection, a curative instruction which expressly instructed the jurors not to consider any of the challenged testimony. Jurors are presumed to have followed their instructions, see *id*., and defendant has not provided any basis for concluding that the jurors failed to do so in this regard.

Accordingly, defendant has not shown that the sergeant's unprompted reference to his "MDOC OTIS photo" was grounds for a mistrial, or that the trial court's denial of his request for that relief was outside the range of principled outcomes. *Boshell*, 337 Mich App at 335.

## III.    CRUEL OR UNUSUAL PUNISHMENT

Defendant next argues that he is entitled to resentencing because his mandatory 25-year minimum sentences under MCL 769.12(1)(a) are disproportionate and constitute cruel and/or unusual punishment. We disagree.

To preserve a claim that a defendant's sentence is unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court. See *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Because defendant did not argue below that his 25-year minimum sentences would be unconstitutionally cruel or unusual punishment, his claim is unpreserved. We review defendant's unpreserved constitutional claim for plain error affecting defendant's substantial rights. *Id*. An error is plain if it is "clear or obvious." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018).

MCL 769.12(1) provides that if a defendant has been convicted of three or more felonies or attempts to commit felonies, and the defendant commits another felony, he or she is subject to enhanced penalties. Subsection (a) then states that if the subsequent felony is a "serious crime" and one or more of the "prior felony convictions are listed prior felonies," the trial court must impose a prison term of at least 25 years. MCL 769.12(1)(a); see also MCL 769.12(6)(a), (c) (defining "[s]erious crime" and "[l]isted prior felony").

Defendant does not dispute that, under MCL 769.12, the trial court was required to sentence him to a term of imprisonment "for not less than 25 years." See MCL 769.12(1)(a). Indeed, at the

sentencing proceeding, defense counsel requested that the trial court impose the "mandatory minimum of 25 years." Defendant also acknowledges that this Court has previously held, in a published opinion, that the 25-year mandatory minimum sentence under MCL 750.520b(2)(b) does not violate either the United States Constitution's prohibition against the cruel and unusual punishment or the Michigan Constitution's prohibition against cruel or unusual punishment. See *People v Benton*, 294 Mich App 191, 203-207; 817 NW2d 599 (2011). Defendant further acknowledges that we are bound by this precedent and does not attempt to distinguish it, instead explaining that he "is preserving the issue for review by the Michigan Supreme Court." Accordingly, defendant has not demonstrated that he is entitled to relief from this Court on this issue.

## IV.     SEPARATION OF POWERS

In his next claim, defendant argues that MCL 769.12(1)(a) is unconstitutional because it violates the separation of powers provision of the Michigan Constitution by eliminating the trial judge's sentencing discretion. We disagree.

To preserve a constitutional issue, "a party must raise it before the trial court." *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021). As defendant acknowledges, he failed to raise this issue below, and so it is unpreserved and reviewed for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

"The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. Under our Constitution, "the ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001), citing Const 1963, art 4, § 45. In contrast, "[t]he authority to impose sentences and to administer the sentencing statutes enacted by the Legislature lies with the judiciary." *Hegwood*, 465 Mich at 436-437. The Legislature also has the authority "to delegate various amounts of sentencing discretion to the judiciary." *People v Garza*, 469 Mich 431, 434; 670 NW2d 662 (2003). "[T]here are offenses with regard to which the judiciary has no sentencing discretion, offenses about which discretion is sharply limited, and offenses regarding which discretion may be exercised under the terms set forth in the sentencing guidelines legislation." *Id*.

Defendant's separation-of-powers challenge to MCL 769.12(1)(a) fails under this settled authority. Particularly instructive is this Court's decision in *People v Murray*, 341 Mich App 205, 213; 989 NW2d 284 (2022), vacated in part on other grounds, 510 Mich 946 (2022). Although *Murray* involved a different statute—MCL 750.520b(2)(b))—the defendant there also argued that a 25-year mandatory minimum sentence was violative of the "separation-of-powers doctrine by depriving a sentencing judge of the discretion to impose an appropriate punishment." *Id.* This Court rejected that argument, explaining that, "[u]ltimately, the Legislature has the exclusive power to determine the sentence prescribed by law for a crime, and the function of the court is only to impose [a] sentence under and in accord with the statute." *Id*. at 216 (citation and quotation marks omitted). We see no reason to conclude otherwise here. MCL 769.12(1)(a) "represents a permissible exercise of legislative authority to prescribe a mandatory minimum sentence" and in enacting it, "the Legislature properly exercised the authority vested in it by Const 1963, art 4, § 45

-6-

to provide penalties for criminal offenses; consequently, there was no violation of the separation-of-powers doctrine." *Murray*, 341 Mich App at 216. Defendant has not shown entitlement to relief on this basis.

## V. STANDARD 4 BRIEF

Defendant raises two additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

### A. MOTION TO DISMISS–180-DAY RULE

Defendant argues that the trial court erred by denying his motion to dismiss for violation of the 180-day rule. We disagree.

As noted, a trial court's decision on a motion to dismiss is reviewed for an abuse of discretion. *Nicholson*, 297 Mich App at 196. Whether the 180-day rule mandates reversal of a conviction is a question of law that this Court reviews de novo. *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003).

MCL 780.131(1) outlines the requirements under the 180-day rule and provides, in relevant part:

> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint.

If a violation of the 180-day rule occurs, "no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." MCL 780.133.

A violation of the 180-day rule is distinct from a speedy-trial violation. *People v Witkoski*, 341 Mich App 54; 988 NW2d 790 (2022). To comply with the 180-day rule, the trial itself does not necessarily have to occur within 180 days. *Id.* "Rather, if apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial, the condition of the statute for the court's retention of jurisdiction is met." *Id.* (quotation marks and citation omitted). In other words,

> the rule requires dismissal of the case if the prosecution fails to commence action on charges pending against an inmate within 180 days after the Department delivers notice of the inmate's imprisonment. But the rule does not require that a trial be

commenced or completed within 180 days of the date notice was delivered. [*Id.* at 61.]

In this case, the 180-day period was triggered by a November 24, 2020 notice. As already discussed, trial did not commence until long after the 180-day period had elapsed, but there is nothing in the record to suggest that the prosecution deferred the proceedings in a bad-faith attempt to delay trial. See *id.* at 62. To the contrary, the record demonstrates that the prosecution acted properly to advance the case and proceed toward trial. Defendant was arraigned in district court in December 2020, and a probable cause hearing and preliminary examination both were scheduled for later that month. Thereafter, over the next approximately seven months, several scheduled hearings had to be adjourned because of protocols related to the COVID-19 pandemic and to accommodate defendant's request for an in-person preliminary examination while the ongoing precautions were in place. In July 2021, defendant's in-person preliminary examination was held. He was arraigned in October, 2021, after two scheduled dates in August had to be adjourned because of the inability to schedule virtual appointments with the MDOC. The trial court granted defendant's requests for a criminal responsibility evaluation and competency examination in January 2022, the results of which were filed with the trial court that May. During a final conference in June 2022, the defense requested an additional final conference, which was scheduled for August 2022. Defendant requested two additional adjournments and filed motions.

Regarding the eventual commencement of trial, defendant asserts that the "[p]rosecutor did not even have [the] case ready for the jury trial that was scheduled for June 12, 2023 as is self evident as the case was once again rescheduled for November 13, 2023." The record, however, shows that the trial was first rescheduled from June 12, 2023 to June 20, 2023, to allow the parties additional time to discuss a plea offer and to provide defense counsel additional time to work with defendant. Then, defense counsel requested yet additional time; the prosecutor was not opposed, and the parties agreed on a trial date of November 13, 2023, which the court explained was the earliest date available because of the "pandemic" cases.

As discussed, there was a substantial delay in defendant's case because of the suspension of criminal proceedings in response to the COVID-19 pandemic. There is no indication that the prosecution could have done anything more than it did during this period to move the case forward. See *id.* at 64 (explaining how, for purposes of the defendant's 180-day claim, the prosecution could not be faulted for the delays caused by the pandemic). And while defendant attempts to blame the prosecution for failing to genuinely move the case along, the record does not support that notion and instead shows that the defense caused several additional delays before trial.[3] In sum, defendant

---

[3] Defendant compares his case to an unpublished opinion of the Court, *People v Sharkey*, unpublished per curiam opinion of the Court of Appeals, issued August 25, 2022 (Docket No. 359874). *Sharkey*, however, is not binding authority, see *Astemborski v Manetta*, 341 Mich App 190, 203; 988 NW2d 857 (2022), and is plainly distinguishable in any event. Although the underlying events in *Sharkey*, like those here, took place during the COVID-19 pandemic, it was clear in *Sharkey*—and even conceded by the prosecution—that the delays in the progress of the defendant's case were due not to the pandemic, but to the prosecution's failure to take any action

-8-

has not established a violation of the 180-day rule, and the trial court did not abuse its discretion by denying his motion to dismiss.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next raises several claims of ineffective assistance of trial counsel. A claim of ineffective assistance of counsel is preserved "by moving in the trial court for a new trial or an evidentiary hearing," *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018), or by moving in this Court to remand for an evidentiary hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant failed to raise any of his ineffective-assistance claims in a motion for a new trial or a request for an evidentiary hearing. Therefore, review of this claim is limited to errors apparent on the record. *Id.*; *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). We review for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo. *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016). "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different*." Id.* at 672 (citation omitted). The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). A defendant also has the burden of establishing the factual predicate for an ineffective-assistance-of-counsel claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

### 1. FAILURE TO MOVE FOR AN INDEPENDENT COMPETENCY EXAMINATION

Defendant first claims that defense counsel was ineffective for failing to move for an independent competency examination.

Pursuant to defense counsel's requests, the trial court ordered that defendant be evaluated for competency and criminal responsibility at the Center for Forensic Psychology (CFP). The CFP examiner concluded that defendant met the standards for competency to stand trial and criminal responsibility, and thus defendant's mental status did not meet the requirements for legal insanity. Defendant has not presented any affidavit or other appropriate offer of proof to refute the CFP findings or to show that defense counsel had reason to question the competency result or to seek another, independent competency examination. Nor has he offered anything to suggest that another mental health professional, if consulted, would have reached a conclusion contrary to that of the CFP. The record is likewise devoid of any indication that counsel performed deficiently by not requesting another competency examination or that there is a reasonable probability that the

---

on the case aside from an initial response to the notice of imprisonment. *Id.*, unpub op at 5-6. As discussed above, however, the record makes clear that the same does not hold true in this case.

outcome of the proceeding would have been different but for defense counsel's failure to do so. See *Shaw*, 315 Mich App at 672.

Defendant takes issue with the fact that his competency examination occurred by video conference rather than in person, and suggests he had a right to an in-person examination. Defendant, however, offers nothing to support this claimed right, or to substantiate his apparent belief that an independent examination would have occurred in person. Nor does he explain or substantiate how the video format of his examination might have been inadequate or why its outcome—or the outcome of another, independent examination—might have been any different if done in person.

In sum, defendant has failed to show that a motion for an independent competency examination would have had any merit or yielded any benefit to him. Accordingly, defendant has not demonstrated that defense counsel was ineffective in this regard. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."); see also *Douglas*, 496 Mich at 592; *Roscoe*, 303 Mich App at 644.

## 2. FAILURE TO FILE AN INTERLOCUTORY APPEAL–SPEEDY TRIAL

Defendant also argues that defense counsel was ineffective for failing to file an interlocutory appeal to challenge the trial court's denial of his motion to dismiss for violation of his right to a speedy trial. As discussed above, however, defendant does not have a valid speedy-trial claim, and thus the trial court did not err by denying his motion to dismiss. Accordingly, because an interlocutory appeal would not have been successful, defendant cannot show that defense counsel provided ineffective assistance by failing to pursue it. See *Ericksen*, 288 Mich App at 201.

## 3. FAILURE TO ADVISE OF MINIMUM SENTENCE

Lastly, defendant contends that his counsel provided ineffective assistance by misadvising him about the minimum sentence he would face if he were convicted. According to defendant, the prosecution offered a plea deal that would have come with a 17-year sentence and, had he been properly informed of his choices, he would have taken that deal rather than go to trial and face a mandatory minimum of 25 years. Generally, counsel's failure to properly advise a defendant of a mandatory minimum sentence may constitute ineffective assistance. See generally *Douglas*, 496 Mich at 591. Defendant, however, has offered nothing to substantiate his claim to that effect, and the record in this case belies it. At a final conference on June 27, 2022, the court and the parties—including defendant—discussed a plea offer that the prosecution had conveyed to defense counsel but that had not yet been relayed to defendant. When going over specifics, the prosecutor announced that the deal would result in "a seven year reduction in the mandatory minimum." At the conclusion of the conference, the trial court asked defendant if he had any questions, and defendant replied that he did not. Defense counsel then requested a breakout room to confer with defendant. Additionally, at a pretrial hearing on September 23, 2023, the parties again placed the plea offer on the record, again with defendant present. The court asked the prosecution what the mandatory minimum sentence would be if defendant were found guilty, and the prosecutor responded that it would be 25 years. The record thus reflects that defendant was informed of the

mandatory minimum sentence as well as the specifics of the plea offer, and we see basis to conclude that counsel performed ineffectively in this regard.  See *id.* at 592; *Roscoe*, 303 Mich App at 644.

Affirmed.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani